(77 South. 547)

ALVERSON v. LITTLE CAHABA COAL CO.
(2 Div. 619.)

(Supreme Court of Alabama. Nov. 15, 1917. Rehearing Denied Dec. 24, 1917.)

1. DEATH ☞46—ACTIONS—PLEADING—REPRESENTATIVE CAPACITY.

A count in an action for wrongful death brought by the deceased's administrator is defective when it fails to aver that plaintiff sues as administrator.

2. MASTER AND SERVANT ☞257—DEATH OF SERVANT—PLEADING—EMPLOYMENT.

In an action for wrongful death of a servant, a complaint failing to set up the relationship of master and servant between deceased and defendant is defective.

3. MASTER AND SERVANT ☞258(15) — INJURIES TO SERVANT—PLEADING.

A complaint in an action for death due to an explosion in a coal mine charging that a

"portion of defendant's mine was defective" was demurrable as not being sufficiently specific.

4. MASTER AND SERVANT ☞258(6)—INJURIES TO SERVANT—PLEADING.

In an action for death due to an explosion in a coal mine, a count charging that defendant was operating a coal mine, that plaintiff's intestate was in the service of defendant as a brusher, that while in such service of defendant plaintiff's intestate was injured and killed by an explosion in defendant's mine, that the death of plaintiff's intestate was the proximate consequence and caused by reason of the negligence of a person unknown who was in defendant's employment and to whose orders plaintiff's intestate was bound to conform, and that his death resulted from his so conforming, defendant's negligence consisting in that such person negligently ordered plaintiff's intestate to examine a portion of the mine for gas or to brush out the gas from a portion of defendant's mine, states a good cause of action under Code 1907, § 3910, subd. 3, providing that, when an injury is caused by reason of the negligence of any person in the service or employment of the master or employer to whose orders or directions the servant was bound to conform and did conform, defendant shall be liable.

5. MASTER AND SERVANT ☞258(7)—INJURIES TO SERVANT—PLEADING.

In an action for death due to an explosion in a coal mine, a count charging defendant's negligence as being the proximate consequence of and as caused by reason of the negligence of defendant, in that defendant knew, or by the exercise of reasonable diligence could have known, that deceased was not experienced or competent to carry a safety lamp for use in defendant's mine when gas was likely to accumulate in quantities sufficient to ignite or explode, but, notwithstanding such knowledge, defendant negligently intrusted deceased with a safety lamp to be used in such mine, does not state a cause of action under Acts 1911, p. 518, § 50, providing that a safety lamp shall not be intrusted to any person "until he has given satisfactory evidence to the mine foreman that he understands the proper use thereof and danger of tampering with same," since the servant may have been inexperienced, and yet have furnished satisfactory evidence to the foreman that he understood the use of the lamp; the statute charging the foreman with the duty of ascertaining before giving any person such a lamp that he understands the use of the same, whether from past experience or from demonstration and answers after the same is fully explained to him.

6. EVIDENCE ☞471(17) — OPINIONS — EXPERIENCE OF SERVANT.

It was error to admit testimony of a witness that he was satisfied from the examination that the intestate knew how to use the safety lamp, such statement being a bare conclusion, Acts 1911, p. 518, § 50, providing that a mine foreman shall not intrust a safety lamp to any person until he is given satisfactory evidence that he understands the use thereof.

7. WITNESSES ☞268(10) — CROSS-EXAMINATION—SCOPE.

Where plaintiff's witness had fully testified as to the employment, assignment of duty, and instructions given intestate, defendant might upon cross-examination bring out what the foreman had told intestate in reference to going to work as a brusher.

8. EVIDENCE ☞276—DECLARATIONS AGAINST INTEREST—NEGLIGENCE.

In an action for death of a servant, declarations of deceased tending to show that he was negligent were admissible as declarations against interest.

9. APPEAL AND ERROR ☞1064(4)—REVIEW—HARMLESS ERROR.

In an action for death due to a gas explosion in a coal mine, instructions merely instructing a finding for defendant if the jury found the existence of contributory negligence as pleaded and that it was the proximate cause of the injury, "even though" defendant's servants may have been guilty of negligence, if error, was harmless.

10. TRIAL ☞188—INJURIES TO SERVANT—INSTRUCTIONS.

A charge that the presumption of law is that deceased at the time he accepted employment as a brusher was a competent person to fill such position was bad as invading the province of the jury; there being evidence that deceased was not a competent brusher when he accepted the employment through the foreman's knowledge.

11. TRIAL ☞252(11)—INJURIES TO SERVANT—INSTRUCTIONS.

A charge that the jury could not find defendant guilty of negligence of which plaintiff could complain because of the system used by defendant in its mine of employing brushers to examine for and brush out gas was erroneous; there being evidence from which the jury could infer negligence on account of defendant's system of ventilation.

12. MASTER AND SERVANT ☞293(4) — INJURIES TO SERVANT—INSTRUCTIONS.

An instruction that there was no evidence of gas accumulating in the room when deceased met his death by reason of defendant's wrong of which plaintiff can complain was not erroneous, where it was deceased's duty to see that the gas was kept out.

13. TRIAL ☞253(4)—INJURIES TO SERVANT—INSTRUCTIONS.

An instruction for defendant if the jury believed it was deceased's duty to brush out the gas in the room where he was killed, and if deceased understood the duties of his position, was erroneous as pretermitting an appreciation of danger on the part of intestate.

14. MASTER AND SERVANT ☞264(10)—INJURIES TO SERVANT—INSTRUCTIONS.

An affirmative charge for defendant on a count describing intestate as a licensee or invitee was not erroneous where the uncontroverted evidence showed that deceased was an employé.

Appeal from Circuit Court, Bibb County; B. M. Miller, Judge.

Action by J. C. Alverson, administrator of Teddy Alverson, deceased, against the Little Cahaba Coal Company for damages for the death of Teddy Alverson. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The caption of the complaint is "J. C. Alverson, Administrator of Teddy Alverson, Deceased." Each of the counts from 1 to 5, inclusive, contain the allegation, after stating that the defendant was controlling and operating a coal mine in Piper, Bibb county, on a certain date, that plaintiff was in the service or employment of the defendant, and while plaintiff was in said mine, in and about said business as aforesaid, a fire broke out in said mine, or was burning in said mine, said fire being caused by the ignition or explosion of gas in said mine, and plaintiff avers that his intestate was burned severely, proximate-

ly resulting in his death. Count 6 is as follows:

"Plaintiff, suing as such administrator, claims for the deceased the sum of ——— for this, that * * * on the 6th day of October, 1914, the defendant was engaged in the operation of a coal mine, and on said date plaintiff's intestate was in the service or employment of the defendant in the following capacity, to wit: A brusher. And plaintiff avers that while in such service or employment of the defendant as such employé plaintiff's intestate was injured and killed by an explosion in said mine of defendant. And plaintiff avers that the death of his intestate was the proximate consequence and caused by reason of a defect in the ways, works, etc. [as under subdivision 1 of the Employers' Liability Act]. And plaintiff avers that the death of his intestate was the proximate consequence of and caused by reason of the negligence of defendant, its servants and agents as aforesaid."

Count 7 sufficiently appears. Count 8 states the cause of action as in count 6 down to and including the words "explosion in defendant's mine," and adds:

"And plaintiff avers that the death of his intestate was the proximate consequence and caused by reason of the negligence of a certain person, whose name is unknown to the plaintiff, who was in the service and employment of the defendant, and to whose orders or directions plaintiff's intestate was bound to conform and did conform, and his said death resulted from his so conforming, and said negligence consisted in this, namely: Said person negligently ordered plaintiff's intestate to examine a portion of said mine for gas or to brush out the gas from a portion of defendant's mine."

Count P is, as to statement of facts, like counts 6 and 8. The negligence alleged is as follows:

"And the plaintiff avers that the death of his intestate was the proximate consequence of, and was caused by reason of, the negligence of the defendant, in this: That said defendant, knew, or by the exercise of reasonable diligence could have known, that said intestate was not experienced or competent to carry a safety lamp for use in defendant's said mine when gas was likely to accumulate in quantities sufficient to ignite or explode, but, notwithstanding such knowledge, defendant negligently intrusted said intestate with a safety lamp to be used by plaintiff's intestate in said mine, as a proximate consequence of which said intestate, while attempting to use said safety lamp in said mine, set fire to gas in said mine on, to wit, September 29, 1914, which burned said intestate so that he died on, to wit, October 6, 1914, and plaintiff avers that the death of his intestate was the proximate consequence of negligence of the defendant as aforesaid."

The twentieth assignment of error is in sustaining the defendant's objection to the question to the witness Crane:

"Now, I will ask you to state whether or not in this mine a sufficient quantity of air had been forced; ventilating system had been proper; if the gas could not have been forced out without brushing."

The following charges were given for the defendant:

(1) The burden of proof in this case is on the plaintiff to show that the defendant did not warn or instruct Alverson as to his duties.

(2) If the jury believe from the evidence in this case that Alverson negligently attempted to light a lamp on the outtake side of the room or heading, and in his so doing ignited gas which exploded, and that such negligence proximately contributed to his injury and death, you must find a verdict for the defendant, even though the jury may believe from the evidence that the fire boss negligently failed to examine the room or heading, and that Goodwin and Motes were also guilty of negligence.

(3) If you believe from the evidence. in this case that Alverson negligently lighted or attempted to light the lamp on the outtake side of the room or heading, and his doing so ignited the gas which exploded and injured him so that he died, and that such negligence proximately contributed in the slightest degree to his injury and death, your verdict must be for the defendant.

(5) The presumption of law in this case is that Alverson, at the time he accepted employment as a brusher, was a competent person to fill such position.

(6) Under the evidence in this case the jury will not be authorized to find the defendant guilty of negligence of which the plaintiff can complain because of and on account of the system used by defendant in its mine of employing brushers to examine for and brush out gas in its said mine.

(7) There is no evidence in this case that gas accumulated in room 35 of the thirteenth west heading by reason of the negligence or wrong of any employé of the defendant of which plaintiff can complain.

(8) If the jury believe from the evidence in this case that it was the duty of Alverson to brush out gas in the thirteenth west heading and rooms therein, and further believe from the evidence in the case that Alverson understood the duties of his position, you must find a verdict for the defendant.

McArthur & Howard and Erle Pettus, all of Birmingham, for appellant. Tillman, Bradley & Morrow, of Birmingham, for appellee.

ANDERSON, C. J. This was an action for the wrongful death of plaintiff's intestate, an employé of the defendant, resulting from burns received from the explosion of gas in the defendant's coal mine. The complaint first and last, contained 30 counts, demurrer was sustained to 15, leaving 15, and why it should require this number of counts to show one death or injury and the damnifying cause of same is beyond the understanding of this writer, or why the courts must be shackled and burdened by a system that requires a review of 15 counts to which demurrer was sustained when 15 were left in the complaint is a reflection upon our existing system, but which has existed so long that the fetters cannot well be severed, except by legislative sanction, which has been repeatedly threatened and promised, but without beneficent results. This is intended as no criticism or reflection upon counsel in the case at bar. They have simply availed themselves of a system and custom that can easily lead to absurdities in the administration of justice. Here the plaintiff has 15 ways of stating his case, and we are called upon to review separately and severally the action of the trial court in sustaining demurrer to the other 15 efforts, and, strange as it may seem, we find at least one good count among the number which was not cov-

ered by those held sufficient by the trial court.

[1, 2] The trial court did not commit reversible error in sustaining the demurrer to counts 1 to 5, inclusive. Neither the caption nor body of the complaint expressly averred that the plaintiff sued as the administrator, and it seems that this rendered the count defective according to what was said in the opinion in the case of Bryant v. So. R. R., 137 Ala. 488, 34 South. 562. The Bryant Case, however, while not expressly overruled, was qualified or explained in the case of Alabama City R. R. v. Heald, 178 Ala. 636, 59 South. 461, to the extent of making counts bad upon demurrer for the failure to charge that the plaintiff sued as administrator to that class where he could maintain an action either in his individual or representative capacity, and not to cases like the present one, where the facts set out showed only a right of action in the personal representatives. If, however, we treat the suit as being by the plaintiff in his representative capacity, each count was defective and insufficient to state a cause of action. They do not set up any relationship between the intestate and the defendant, any right on his part to be in the mine, or the duty owing him by the defendant. They say:

"Plaintiff was in the service or employment of the defendant, in or about said business of the defendant, and while plaintiff was in said mine, in or about said business, as aforesaid, a fire broke out," etc.

While it avers that the intestate was burned, etc., it does not charge that he was in the mine under the service or employment of the defendant. Moreover, the plaintiff got substantially the benefit of these counts by others to which the demurrers were overruled, but which did not contain the technical defect above mentioned.

[3] The trial court did not err in sustaining the defendant's demurrer to the sixth count. It charged merely that "a portion of defendant's mine was defective." This court had previously gone the limit as to permitting a general averment as to negligence in a complaint and in the description of the defect, but it was held in the case of Tenn. Co. v. Smith, 171 Ala. 251, 55 South. 170, that the rule would not be extended as to generality of defects further than it had gone in the cases of Jackson Co. v. Cunningham, 141 Ala. 213, 37 South. 445, and A. G. S. R. R. v. Davis, 119 Ala. 572, 24 South. 862. In the Tenn. Co. Case, supra, it was held by the majority that the averment of a defect in an entry of the mine was too indefinite, and the averment here is more general and indefinite than in said case. The case of Pioneer Co. v. Smith, 150 Ala. 356, 43 South. 561, involved a count more specific than the one in question, but whether or not the averment there would have withstood an appropriate demurrer we did not decide, as the question seems not to have been raised in said case, and the opinion nowhere discloses the sufficiency of the complaint in this respect. Moreover, we do not think that the plaintiff's case was prejudiced by the elimination of count 6, as he got the benefit of the only possible or inferable defects that could have proximately caused the injury to the intestate which subsequently resulted in his death under counts A and E, to which demurrer was overruled.

Count 7, while purporting to proceed upon the superintendence provision of the Employers' Liability Act, also charges the breach of a nondelegable duty. Moreover, the negligence of a superintendent was permitted in most general terms in counts I and J, to which the demurrer was overruled, except that they named the superintendent and the seventh count avers that his name is unknown. The alternate averment of said count as to a failure to equip the mine with a proper ventilator or brattice was sufficiently presented in other counts to which demurrers were overruled.

[4] Count 8 is under subdivision 3 of the Employers' Act (section 3910 of the Code of 1907), and was not subject to the defendant's demurrers which were erroneously sustained by the trial court. Creola Co. v. Mills, 149 Ala. 474, 42 South. 1019; Bear Creek Mill Co. v. Parker, 134 Ala. 293, 32 South. 700. Notwithstanding demurrers were overruled to 15 counts of this complaint, we fail to find that the plaintiff got the benefit of count 8 under any of them.

[5] Count P was an attempt to state a cause of action under section 50, Acts 1911, p. 518. In the first place, it charges that the defendant intrusted the safety lamp to the intestate knowing that he was not experienced or competent. The statute provides that such a lamp shall not be intrusted to the person "until he has given satisfactory evidence to the mine foreman that he understands the proper use thereof and danger of tampering with the same." Construing the count most strongly against the pleader, upon demurrer, the fact that the intestate was not experienced and that the foreman knew that he was not when intrusting him with the lamp did not necessarily violate the statute. He may have been inexperienced, and yet may have furnished satisfactory evidence to the mine foreman that he understood the use of same. The mine foreman may have undertaken to instruct him, and he, the intestate, may have demonstrated that he had learned and understood the use of same, although he had had no previous experience in handling such lamps. If such a lamp could only be intrusted to those of experience, then no new man could be given one or trained or taught to use same. The meaning of this section is that the foreman must ascertain before giving a person such a lamp that he understands the use of same, whether from past experience or from demonstration and answers after the same is fully explained to him.

The other counts to which demurrers were sustained were either faulty or the plaintiff got the full benefit of same under the counts that remained in the complaint, and a discussion of same would merely prolong this opinion without serving any good purpose.

[6] The trial court erred in permitting the witness Goodwin to answer that he was satisfied from the examination that the intestate knew how to use a safety lamp. This was but the bare conclusion of the witness, and substituted him for the jury in determining the existence or nonexistence of a material fact in the case. The statute provides that satisfactory evidence must be furnished the mine foreman, but does not make him the sole arbiter of the fact. It means such evidence as would reasonably satisfy an ordinarily prudent and careful foreman that the person understood the proper use of such a lamp and as to whether or not such evidence was sufficient to satisfy such a foreman is a question for the jury.

[7] The witness Goodwin had testified fully for the plaintiff as to the employment, assignment of duty, instructions, etc., given the intestate, and it was permissible for the defendant, upon cross-examination, to bring out by way of elucidation what he told the intestate in reference to going to work as a brusher.

The plaintiff got the full benefit of the question to witness Crance embraced in the twentieth assignment of error, as it was in effect answered by the witness after he had qualified as an expert.

[8] It is a well-established rule of evidence that the declarations of a deceased person when a part of the res gestæ are admissible, whether the same be in favor of or against the interest of the deceased or his estate. When the declaration is not a part of the res gestæ, it is admissible when against the interest of the declarant, but not when in his favor. Dying declarations as such are not admissible per se in civil cases, but are governed by the general rule of admitting declarations against interest. It therefore follows that the testimony elicited by the defendant as to what the intestate stated before his death tending to show that he was guilty of contributory negligence and other facts favorable to the defendant as to his experience, instructions to him, etc., and how the injury occurred, were admissible as being declarations against interest. Nor is this character of cases removed from the general rule because the suit is for the death of the intestate and by his legal representative.

"In actions by an administrator for death by wrongful act, statements of his decedent indicating contributory negligence are admissible as declarations against interest." 4 Ency. of Ev. p. 91.

"In actions for or against an estate the admissions of the deceased are competent as against his executor or administrator in all causes where they would have been competent against him, if living. But not in his favor unless they are a part of the res gestæ." Volume 1 Ency. of Ev., pp. 571, 572; Seyfer v. Otoe, 66 Neb. 566, 92 N. W. 756.

The declarations of the deceased, offered by the defendant, being opposed to his interest, were properly admitted. Merriweather v. Sayre Mining Co., 161 Ala. 454, 49 South. 916. Those offered by the plaintiff, not being part of the res gestæ and being independent of, and not a part of or explanatory of, those declarations introduced by the defendant, were properly disallowed by the trial court. Danville R. R. Co. v. Hammond, 93 Ala. 181, 9 South. 577. The case of L. & N. R. R. v. Malone, 109 Ala. 509, 20 South. 33, is not opposed to this holding, as we fully agree with said case that, when one party elicits a statement made to a witness, it is proper to permit the other side to call for the conversation, but this rule does not justify statements by the intestate in the case at bar, not part of the res gestæ, which were favorable to him, and not a part of the declarations to or conversations with the witness who testified at the instance of the defendant. We have considered all rulings upon the evidence, whether discussed or not, and do not think that the trial court erred to reverse as to any of them except the one noted in this opinion.

Charge 1 given for the defendant was at least misleading, if not faulty, and can well be refused upon the next trial. It was only incumbent upon the plaintiff to reasonably satisfy the jury as to the existence of the fact hypothesized, and the word "show" is perhaps a stronger term, but, as the case must be reversed for other reasons, we need not decide whether or not the giving of this charge was reversible error.

[9] Charges 2 and 3, given for the defendant, merely instructed a finding for the defendant if the jury found the existence of the contributory negligence as pleaded, and that it was the proximate cause of the injury, notwithstanding the defendant's servants may have been guilty of negligence. It may be that by use of the words "even though" a refusal could have been justified, but the giving of same was not reversible error.

[10] The trial court erred in giving charge 5, at the request of the defendant. If not otherwise bad, it invaded the province of the jury. There was evidence tending to show that Alverson was not a competent brusher at the time he accepted the employment; that the mine foreman knew this fact, and was having him coached under "Motes," who was to O. K. him, and who had not given him said O. K.

[11] The trial court erred in giving charge 6 at the request of the defendant. There was evidence from which the jury could infer negligence on account of the system used by the defendant of ventilating its mine, and

this dereliction was covered by count E of the complaint.

[12] There was no error in giving charge 7 at the request of the defendant. If the place was not safe or was not supplied with a proper system to keep out the gas, this was a nondelegable duty not attributable to the negligence of any employé. There was proof that the gas could have been prevented in room 35 had it been properly bratticed, but it was the duty of the intestate to do this or of some one who was his mere fellow servant.

[13] The trial court erred in giving charge 8 requested by the defendant. If not otherwise faulty it pretermits an appreciation or danger on the part of the intestate. Alverson may have understood the duties of his position, that is, what he had to do, but may not have understood or appreciated the risk or danger incident thereto or connected therewith.

Charges 9 and 11 were evidently given for the plaintiff and not the defendant, as set out. At any rate, the plaintiff cannot complain of same.

[14] There was no error in giving charge 10, the affirmative charge for defendant as to count F. This count described the intestate as a licensee or invitee, and the uncontroverted evidence showed that he was an employé.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.